IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MSR IMPORTS, INC., <br><br>                    Plaintiff, <br><br> v. <br><br> GLOBAL GOODS, *et al*., <br><br>                    Defendants. | Civil Action No. <br><br> 2:23-cv-2133 <br><br> Jury Trial Requested <br><br> **<u>FILED UNDER SEAL</u>** |

### DECLARATION OF JONATHAN RODACK
### IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
### FOR ENTRY OF A TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

I, JONATHAN RODACK, do hereby declare:

1. I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2. I am the CEO and co-owner of MSR IMPORTS, INC., a New Jersey Corporation, having it principal place and doing business at 6920 Central Highway, Pennsauken, New Jersey 08109. ("MSR")  MSR is a small family owned business that owns and operates a design, manufacturing, and distributing company. MSR distributes its original products through authorized sellers on Amazon and elsewhere.

3. I make this declaration in support of Plaintiff's *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on **Schedule "A"** to the Complaint.

4. The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores ("Online Marketplace Platforms" or "OMPs") using the seller identities and store names set forth on **Schedule "A"** to the Complaint.

5. Plaintiff has created and innovated all of its own products, packaging, and advertising. This is a costly effort involving graphic design, industrial design and tooling. It takes time to create, design, test, redesign and retest prototypes. Products are introduced to retailers via tradeshows. This introduction process costs a lot of money but it is a chance to show customers the quality and use of the product. Today, Plaintiff sells many different original products throughout the world.

6. My father, Mark Rodak, began our family business in 1979. I later took over running the business and that continues today.

7. Genuine goods comprising Plaintiff's Works and Trade Dress (as defined below) are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiff's overall marketing.

8. Thus, Plaintiff and its authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Other costs include print catalog ads, tradeshows, and handing out free samples. Those strategies allow

Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold thereunder.  Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results.

9. Plaintiff developed and sells its unique SNOWMAN and SANTA light covers through its authorized sellers.  The SNOWMAN light cover sculpture is the subject of U.S. Copyright Registration No. VA-1-941-099. A copy of the Copyright Registration and deposit copy for the SNOWMAN light cover are attached to the Complaint as **Exhibit 3A.** The SANTA light cover sculpture is the subjection of U.S. Copyright Registration No. VAu-1-414-313. Copies of the Copyright registration and deposit copy for the SANTA light cover are attached to the Complaint as **Exhibit 3B**.

10. The Plaintiff's Products are charming light covers in the form of a SNOWMAN and SANTA.  Below are images of Plaintiff's Products, SNOWMAN (ASIN[1] B06XKMP9KX) and SANTA (ASIN B07M9ZCWP8).



| Retails for about $24.00 | Retails for about $19.99 |

---

[1]   Refers to Amazon Standard Identification Number. Each product is assigned a unique ASIN when listed on Amazon.

11. Plaintiff's Products have unique ornamental features, including: whimsical artistic faces, colors, and decorations-- inherently distinct features, color, size, and shape selections, that all function as a source identifier for the Plaintiff's Product. The combined distinct features of the Plaintiff's Works all support the copyright registrations issued by the U.S. Copyright Office. Screen shots of the Plaintiff's Authorized Sellers' Amazon Stores are shown in **Complaint Exhibit 2.**[2]

12. The combined unique features, ornamental, and decorative features of Plaintiff's Product and Plaintiff's Works comprise Plaintiff's Trade Dress, including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiff's valuable intellectual property ("IP") and all have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiff's Products.

13. Plaintiff's Works and Trade Dress have been used in interstate commerce to identify and distinguish Plaintiff's goods. Plaintiff's Works and Trade Dress have been used by Plaintiff prior in time to Defendants' infringement of the Plaintiff's Works. Plaintiff's Works and Trade Dress have never been assigned or licensed to any of the Defendants in this matter. The Plaintiff's Works and Trade Dress are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

---

[2] As set forth in the Complaint, and proven in **Composite Exhibit 1**, all of the Defendants are infringing on one or more Plaintiff's federal copyright registration and/or trade dress. ("Infringing Products").

14. Due to the success of Plaintiff's Products, Plaintiff and its Authorized Sellers have become the target of multiple infringers seeking to profit off the goodwill, reputation, and fame enjoyed by Plaintiff's Products.

15. Plaintiff has been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Infringing Products since allowing the unlawful listings to continue is causing damage to Plaintiff's reputation and bottom line. Some Defendants sell their infringing products at a lower price that specifically undercuts the controlled retail price of the Plaintiff's Products. Because of the software provided by the various Internet Marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers. Plaintiff's Products are thus ignored. Plaintiff has had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it.

16. Another major problem with the Internet Marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufacturers to the Infringing Products. In essence, a counterfeiter in Canada, Vietnam, or Russia, for example, may order a crate of Infringing Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Infringing Products to a US consumer through a Third-Party Service Provider. The ease of this system encourages knock-offs to flourish.

17. For these reasons, Plaintiff retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces. During the process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. These manufacturers were supplying many of

the other identified Defendants with infringing products flooding the Internet marketplaces and damaging Plaintiff's business. This damage to Plaintiff's business will continue unless Plaintiff receive the sought after restraining order and injunctive relief.

18. Defendants' sale, distribution, and advertising of the Infringing Product are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Products when in fact they are not. To illustrate, below are several examples which vividly show that the Infringing Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Products or that the Infringing Products are otherwise approved by or sourced from Plaintiff:



| PLAINTIFF'S PRODUCT | INFRINGING LISTING OF DEFENDANT Surprise Cabin |
|---|---|
|  |  |
| **PLAINTIFF'S PRODUCT** | **INFRINGING LISTING OF DEFENDANT SiWeiKeJi** |
|  |  |
| **PLAINTIFF'S PRODUCT** | **INFRINGING LISTING OF DEFENDANT REGIS** |
|  |  |



Additional photograph comparisons of Plaintiff's Products and the Infringing Products appear in **Exhibit 1** and **Exhibit 3C** attached to the Complaint.

19. Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Products and the genuine version of Plaintiff's Products. Some purchasers of Defendants' Infringing Products have written on-line reviews to complain about the quality of the Infringing Products believing same to be a genuine version of Plaintiff's Products.

20. Since some of the Infringing Products may be poorly designed and manufactured products, there is a risk of injury to and disappointment from the confused customers.

21. As such, the Infringing Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned.

22. Defendants do not have, nor have they ever had, the right or authority to use Plaintiff's Registered Copyright or Trade Dress, for any purpose. Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its rights to fair competition. By their activities, Defendants are defrauding Plaintiff and the consuming public for Defendants' benefit.

Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' infringement of the Plaintiff.

23. Given Defendants' copying and therefore infringing on Plaintiff's Works in violation of 17 U.S.C. § 501 (a), the Infringing Products are indistinguishable to consumers, both at the point of sale and post-sale. By using Plaintiff's intellectual property, Defendants have created a false association between their Infringing Products, their Internet e-commerce stores, and Plaintiff. Such false association is in violation of 15 U.S.C. § 1125(a), constitutes unfair competition, infringes on Plaintiff's Trade Dress, and is causing and will continue to cause Plaintiff irreparable harm and damage.

24. The infringements of Plaintiff's Works deprive Plaintiff of the ability to control the creative content protected by the Copyright Act, it devalues the Plaintiff's authentic products by associating them with inferior quality goods, and it undermines the value of the Plaintiff's IP by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to attract investors and markets for the Plaintiff's Products.

25. I have reviewed **Composite Exhibit 1** and the pictured web listings and upon my information and belief, the Defendants identified in **Schedule "A"** of the Complaint, were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and or/selling non genuine, infringing versions of Plaintiff's Products and copying and using Plaintiff' Works, and/or Trade Dress, or using substantially similar copies of Plaintiff's Works, with the non-genuine, copies of Plaintiff's Products directed to U.S. consumers, including those consumers in Pennsylvania, through their e-commerce stores.

26. None of the identified Defendants are authorized re-sellers of genuine version of Plaintiff's Products. Moreover, none of the identified Defendants are authorized to manufacture, import, export, advertise, offer for sale or sell Plaintiff's Products. Further, Plaintiff never consented or granted permission to any of the identified Defendants to use Plaintiff's Works or Trade Dress.

27. I have confirmed that all of the identified products pictured in **Composite Exhibit 1** are infringements of Plaintiff's Products and upon information and belief, the Defendants set forth in **Schedule "A" of the Complaint** were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing and unfairly competing products with at least one of the Plaintiff's Works, or substantially similar copies of Plaintiff's Works, or Trade Dress, to sell to U.S. consumers, including those consumers in Pennsylvania, through their Online Marketplace Storefronts. Through visual inspection of Defendants' listings for Infringing Products, it was confirmed that each Defendant is featuring, displaying, and/or using at least one of Plaintiff's Works without authorization and that the products that each Defendant, by infringing on at least one of Plaintiff's Works or Trade Dress, is offering are infringing versions of the Plaintiff's Products. The checkout pages or order forms for the Infringing Products confirm that each Defendant was and/or is still currently offering for sale and/or selling Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Infringing products to the United States, including to customers located in Pennsylvania. At checkout, a shipping address located in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania verified that each Defendant provides shipping to the Pennsylvania Address. I inspected the detailed web listings describing

the Infringing Products Defendants are offering for sale through the Internet based e-commerce stores operating under each of their respective Seller IDs, and determined the products were not genuine versions of Plaintiff's Products. Further, each of the Defendant's web listing infringes on the Plaintiff's Works.

28. Defendants' actions have caused and will continue to cause, in the event the requested relief is not granted, irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that the Defendants' cheaply produced, inferior, and typically faulty infringing products and knock-offs are produced, authorized, approved, endorsed, or licensed by Plaintiff, when they are not.

29. Defendants' intentional and illegal conduct, including offering for sale and selling inferior infringing and knock-offs into the U.S. and the Commonwealth of Pennsylvania has caused lost profits to Plaintiff and damaged the inherent value of Plaintiff's business, and, by diluting the brand and goodwill, damaging Plaintiff's reputation for providing high quality products, and interfering with Plaintiff's relationships with its customers and authorized resellers, as well as impeding Plaintiff's ability to attract new customers and business. Defendants are willfully and in bad faith infringing on Plaintiff's Works, thereby unjustly profiting from such activities at Plaintiff's expense.

30. All of the injuries and damages described above are taking place in the United States, including in Pittsburgh, Allegheny County, Pennsylvania.

31. In addition to trying to stop the injuries and damages caused to Plaintiff's business, Plaintiff is also seeking in this lawsuit to protect consumers from being exposed to and purchasing the substandard, faulty, and potentially dangerous knock-offs and infringing products that wrongly use Plaintiff's Works and/or Trade Dress.

32. I have worked with Plaintiff's legal counsel in this case to assist them in identifying knock-off products and have provided them with various leads in order to find the various outlets for the infringing and knock-off products. If called upon by the Court, Plaintiff's legal counsel is able to explain additional differences between the genuine version of Plaintiff's Product and the knock-off products and unfairly competing products offered by the identified Defendants.

33. To be sure that none of the Defendants receive advance notice of the relief and remedies requested in Plaintiff's Complaint, or the *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction in this case, neither I nor anybody else at Plaintiff have publicized the filing of this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

**Dated: December 19, 2023**

Pennsauken, New Jersey

      /s/Jonathan Rodack
      **Jonathan Rodack**